A91A0914. LEWIS et al. v. ROGERS.
(412 SE2d 632)

ANDREWS, Judge.

Lewis and Cloud appeal the damages awarded by the jury after the trial court's grant of summary judgment on liability.

Rogers, an accountant, was initially contacted by Starke about moving from Tennessee to Savannah to become chief financial officer for Savannah Enterprises, Inc. He was a salaried employee of that company, which was a holding company for several other companies, the principals of which were Starke, Dantis, Lewis and Cloud.[1] The companies were set up to develop golf courses, including providing the sprinkling systems and turf.

Young, who was not an investor or officer, was hired to procure investment funds for the ventures. Starke was traveling to meet with Young and asked Rogers to allow him to use Rogers' personal American Express card to charge the costs. Rogers agreed and thereafter Starke loaned the card to Young for his use in travelling. Large bills were run up on the card and Rogers became concerned, asking the four investors for a written promise that the bills would be paid. Starke agreed to that and also agreed that a $1 per $1 commission would be paid for use of the card. The document, prepared by Rogers, was signed by Lewis, Cloud, Starke and Dantis on November 7, 1987 and provided that "[t]he officers of Golf Courses International Inc. (Richard P. Starke, Gary W. Dantis, . . . J. Edwin Lewis and Edwin Cloud) personally guarantee all charges incurred on [Rogers'] American Express Card incurred by Michael Young," as well as for the commission.

The companies did not succeed and the card was not kept current, causing American Express to place the account for collection

---

[1] Starke and Dantis were held liable by the court on summary judgment. Dantis entered into a consent judgment with Rogers on October 31, 1988 (filed January 3, 1989) in which he agreed to pay $75,000. Starke failed to appear for trial and the judgment against him remains.

and register a bad credit report on Rogers. Rogers filed for bankruptcy in November 1989, with American Express filing a claim for $18,828.05.

Rogers sued the four men for the amount owing on the card, attorney fees under OCGA § 13-6-11, the commission, and consequential damages from the adverse credit rating.

Rogers moved for summary judgment on "all matters contained in Plaintiff's complaint," which was granted on November 30, 1988.

On January 18, 1989, Lewis and Cloud's attorney served Rogers' attorney with a demand that they proceed to collect the debt from Golf Courses International, Inc., contending that company was the principal for whose benefit the charge card was used and that the document was a guaranty under OCGA § 10-7-24.

On February 1, 1989, Lewis and Cloud filed their motion for reconsideration of the summary judgment, contending that the contract was usurious; liability in any event was joint and not several; and attorney fees were not appropriate. On March 1, 1989, the court amended its order holding that liability was only joint and the 100 percent commission was usurious resulting in forfeiture of the interest charges. It also reserved the issue of attorney fees until the damages hearing.

In June 1990, the jury awarded and judgment was entered for $18,828.05 principal, with prejudgment interest of $1,343.52 plus attorney fees of $24,045.

1. Defendants contend that the court's failure to direct a verdict in their favor on the issue of attorney fees was error. The basis for Rogers' claim for attorney fees pursuant to OCGA § 13-6-11 was defendants' stubborn refusal to "make payments according to their contractual agreement," i.e., the refusal to pay American Express within 30 days as the bills accrued.

"The question of attorney fees under OCGA § 13-6-11 is a question for the jury. [Cit.] The standard of review of an award of attorney fees under OCGA § 13-6-11 is whether there is any evidence to support the award. [Cit.]" *Spring Lake Property Owners Assn. v. Peacock*, 260 Ga. 80, 81 (390 SE2d 31) (1990). Here, there was sufficient evidence of the refusal of the defendants to pay the outstanding balance of the credit card, even though they admitted that at least portions of the accrued charges were attributable to the business, to allow the case to go to the jury and to support the award. *Hirsh v. Goodlett*, 196 Ga. App. 127, 128 (2) (395 SE2d 626) (1990).

2. Defendants contend error in the denial of their motion for directed verdict on the issue of whether the judgment against Dantis extinguished any further claim against the joint obligors.

The motion for reconsideration of the grant of summary judgment on liability raised the issue of joint as opposed to joint and sev-

eral liability by contending that the document was only a joint obligation under the authority of *Bank of LaFayette v. Giles,* 208 Ga. 674, 681 (5) (69 SE2d 78) (1952). That motion was granted by the court and the initial judgment amended to reflect that the liability was joint and not joint and several.[2] At trial, the only specific motion for directed verdict made by defendants related to the attorney fee issue. Additionally, defendants asked for a directed verdict "on several issues remaining in the case. The same as we had before on the motions for summary judgment." The motion for summary judgment filed by defendants on the extent of liability was granted, however, leaving nothing pending on this issue for purposes of the directed verdict. Therefore, the second enumeration presents nothing for our review.

3. The third enumeration contends that the court erred in granting Rogers' motion for summary judgment "and failing to reconsider the issue of liability at the request of Appellants. The failure of appellee to file suit against the principal of the indebtedness within three months after request by Appellants bars the instant litigation."

Since the court did reconsider the issue of liability on the grounds raised by defendants in their motion for reconsideration, the initial contention fails.

Defendants filed a motion for summary judgment on the issue of whether the failure of the creditor to sue the principal after notice under OCGA § 10-7-24 discharges the guarantor. The motion was based on *Pine Timber Co. v. Anthony,* 191 Ga. App. 375 (381 SE2d 591) (1989). To the extent this argument can be considered raised by the incorporating motion for directed verdict, OCGA § 9-11-50 (a); *Fidelity &c. Ins. Co. of New York v. Massey,* 162 Ga. App. 249, 250 (1) (291 SE2d 97) (1982), it is without merit.

Contracts creating the relationship of principal and guarantor and principal and surety are strictly construed. See *Glasser v. Decatur Lumber &c.,* 95 Ga. App. 665, 671 (3) (99 SE2d 330) (1957). Here, the court concluded, and we agree, that the four defendants signed, not as guarantors, but as principals directly obligated under the document and, therefore, OCGA § 10-7-24 was not applicable. *Pine Timber* does not require a different result, standing only for the proposition that the statute is still in force and was not superseded by the UCC.

4. The remaining enumeration is without merit.

5. The motion for imposition of a ten percent penalty for frivolous appeal is denied.

*Judgment affirmed. Sognier, C. J., and McMurray, P. J., concur.*

---

[2] That portion of the court's ruling has not been appealed. But see *Ghitter v. Edge,* 118 Ga. App. 750, 752 (2) (165 SE2d 598) (1968).

Decided November 20, 1991.

*Ratchford, Hall & Godlove, Joseph M. Hall,* for appellants.
*Jones, Bordeaux & Associates, Harold J. Cronk,* for appellee.